## Landrum, et al. v. Landrum's Admx., et al.

(Decided February 3, 1920.)

### Appeal from Graves Circuit Court.

1. Insurance—Change of Beneficiaries.—The insured in a life insurance policy which gives him the right to change the beneficiary may do so without the consent of the named beneficiary, as the latter has no vested interest in the policy before the death of the insured.

2. Contribution—Devise to One After Payment of Debts.—A devise of property made to one after the payment of debts which are made a charge upon the devised property is not entitled to contribution.

3. Subrogation—What One Must Do to Invoke Principle of.—To be entitled to invoke the principle of subrogation one must either advance money to the discharge of the obligation of a debtor, or he must be the owner of property which is subjected to the payment of another's debt, regardless of whatever other conditions are essential to the right of subrogation.

4. Subrogation—Devisee of Property Which Will Charges With Debt.—A devise of property which the will charges with the payment of a debt cannot be subrogated to the rights of creditors against the general assets of the estate, because of the payment of the debt to protect his interest, or the subjection of the property to the payment of the debt.

D. G. PARK and H. S. BARKER for appellants.

W. J. WEBB, E. C. O'REAR and J. C. JONES for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The life of John W. Landrum, who died in the month of March, 1914, was insured, in the Commonwealth's Life Insurance Company, for the sum of $5,000.00. The policy was issued upon his application, and was, when first issued, made payable to his estate, in the event of his death. The policy contract contained a clause to the effect, that the insured, might, at any time, change the beneficiary or beneficiaries of the policy, by filing a written request to that effect, with the company, accompanied by the policy, and the change of the beneficiary should take effect, when the company should indorse the change thereon. In the year, 1909, the insured made a written request, of the company, that the beneficiary of the policy, should be changed from the "estate" of the insured, to his wife, Bessie A. Landrum, if living, one-third,

and to his sons, James D. Landrum, and Thomas J. Landrum, one-third each, but, should the wife die before the insured, then the entire amount of the policy to the surviving children, of the insured, an equal portion to each. This request was complied with by the company, and the change of beneficiary was properly indorsed, upon the policy, by the company. In the month of January, 1914, the insured desiring to make another change in the beneficiary, filed with the company, a request, which was signed by himself, his wife, Bessie A. Landrum, and by his two sons, by their statutory guardian. This request was to the effect, that the beneficiary of the policy be changed from his wife and two sons, he having at that time no other surviving children, and that it be made payable, in the event of his death, to "C. C. Wyatt, trustee, to be applied by him on the individual personal debts, only, owing by the insured at the time of his death, except such as were secured by lien on real estate; and any residue, to James D. Landrum and Thomas J. Landrum equally, if living, if either are not living, then to the survivor." This request was complied with by the company, and the change of beneficiaries carried into effect, by indorsement on the policy by the company in the lifetime of the insured. At the same time, that the insured and the then beneficiaries executed the request to the company for the change of the beneficiaries, the trustee, C. C. Wyatt, executed a writing, by which he agreed, that, in the event of the death of the insured, he would receive and dispose of the proceeds of the policy in accordance with the change of beneficiaries, then made.

The insured was largely involved with debts at the time of his death, and an action was instituted, by his administratrix, against his heirs and creditors, for a settlement of his estate. Wyatt, the trustee, collected the insurance under the policy. The estate of decedent consisted, chiefly, of the proceeds of the policy of insurance; certain interests in real estate; the sum, of $25,000.00 of the first mortgage bonds of the Mayfield Water & Light Company, one hundred and fifty shares, of the par value of $100.00 each, of the common stock of the Water & Light Company, which was of the actual value of about $50.00 to the share, and certain articles of household property. The real estate was encumbered with mortgage liens, as was, also, the bonds of the water and light company, and one hundred and thirty shares of the common stock of the

water and light company, were pledged as security for certain debts, which were not otherwise secured. The real estate was sold, and the proceeds applied in satisfaction of the liens upon it, and the mortgage bonds were sold, and the proceeds applied to the discharge of the debts, for which they were pledged, leaving a sum for the general creditors of the estate, of something in excess of $6,000.00. The proceeds of the life insurance policy, which had been collected by the trustee, were, under the order of the court, applied to the payment of the individual, personal debts of the decedent, owing by him at the time of his death, other than those, secured by liens upon real estate, and, in this way, the entire proceeds of the policy were exhausted, leaving no residue, and satisfying a fraction in excess of forty three per centum of the debts to which the proceeds of the policy were applied. The remaining assets of the estate, arising from the sale of the mortgage bonds of the water and light company, after the satisfaction of the debts for which they were pledged, left a sufficiency, when applied, to satisfy the remaining indebtedness of the estate, less a claim upon which judgment had not been rendered, and certain costs and attorneys' fees, for representation of the administratrix, upon which there had been no adjudication. The surplus, arising from the sale of the mortgage bonds, was applied in satisfaction of all the indebtedness of the estate, and entirely liquidated it, except as above stated. When the debts, which were secured by pledges of the stock of the water and light company, were fully satisfied, the certificates of the stock, were taken up by the commissioner of the court, who under the orders of the court, had paid the debts out of the assets of the estate, in his hands. Funds were reserved for the payment of the contested claim against the estate, which had not been reduced to a judgment, and there was left of the estate of decedent in the hands of the commissioner of the court, $275.00 in money, and one hundred and fifty shares of the common stock of the water and light company, but, this money and stock, by order of the court, was retained in the hands of the commissioner until the unpaid costs and attorneys' fees should be satisfied, and presumably, in the event of the failure of the parties to discharge this indebtedness, the funds and stocks, in the hands of the commissioner, should, in the future, be subjected to their payment. Previously to the

order of distribution, the appellants, James D. Landrum, and Thomas J. Landrum, set up the contention, that they were the owners of the proceeds of the life insurance policy, and, that, at the request of the insured, and by their consent, it had been assigned, by the insured, as a security for the payment of the debts, which he might owe at his death, not secured by liens upon real estate, and that as such, the proceeds of it were secondarily liable only for the payment of such debts, the general assets of the estate being primarily liable for the debts, and the pledges of the water and light company stock being, also, liable, before the proceeds of the policy, and there being a sufficiency of other assets to satisfy all the indebtedness, they were entitled to have the proceeds of the policy exonerated from the payment of the indebtedness, and at least, through the equitable principle of subrogation to be substituted to the rights of the creditors of the estate, and, in this way, have the proceeds of the policy, preserved for them, or to be reimbursed out of the other assets of the estate, and especially from the shares of the stock of the water and light company which were pledged to secure the payment of some of the debts, the payments of which were made, in part, out of the proceeds of the policy. In the order of distribution, made by the court, of the proceeds of the policy, these asserted rights of appellants, were preserved, in the event the court should, thereafter, adjudge, that they had such rights in the distribution of the estate as they claimed. The court, however, denied the contentions of appellants, by a later judgment, and adjudged, that they were not entitled to an exoneration of the proceeds of the policy by the payment of individual personal debts of decedent, other than those, secured by liens upon real estate, with general assets of the estate, nor to a subrogation to the rights of the creditors of the estate to liens upon the stock of the water and light company, which was pledged to secure certain of the debts, nor to their rights as against the general assets of the estate, and adjudged, that the $275.00 remaining of the assets, be distributed, one-half to the widow of decedent, and one-half to the appellants, in equal portions, and that the one hundred and fifty shares of water and light company stock be distributed in kind, one-half to the widow, and the remaining one-half equally, between appellants, and from this judgment, James D. Landrum and Thomas J. Landrum have appealed.

There seem to be two grounds upon which the appellants rest their claim to a right to be substituted to the claims of the creditors of the estate, to whose debts, the proceeds of the policy were applied, and these grounds are somewhat intertwined in the working out of the theory of appellants, but they will be considered separately. One of the grounds, is, that appellants occupy a similar position to that of devisees, to the heirs and creditors of the estate, and being devisees of the proceeds, of the policy, they were, in the first instance, entitled to have the proceeds of the policy exonerated from the payment of debts of any kind, until the general assets of the estate were exhausted, and the proceeds of the policy having been applied to the payment of the debts, leaving assets of the estate, which could and should have been so applied, they are, now entitled to be subrogated to the claims of the creditors as against those assets, and to be reimbursed to the extent, that the proceeds of the policy were appropriated in discharge of the indebtedness out of the assets of the estate, for distribution among the heirs. It may be conceded, that a policy of life insurance for the benefit of the family of the insured, is testamentary in its character, and that by so treating it, the intentions and purposes of the insured, may be more nearly approximated; and in the designation of the beneficiaries, the language of the policy, should receive the same construction, as if used in a will. Duvall v. Goodson, 79 Ky. 228; Robinson v. Duvall, 79 Ky. 83; Supreme Council Catholic Knights, etc. v. Densford, 21 K. L. R. 1574; Wolfe v. Pearce, 20 R. 297; Gault v. Gault, 25 R. 2310, 25 Cyc. 741. Treating the policy, touching the disposition of the proceeds, in the instant case, as of a testamentary character, and to be construed as a will, the intention of the insured, as appears from the language, used to express his intentions, becomes of supreme importance in the absence of any ambiguity in the language, as must be conceded from a reading of the designation of the beneficiaries, and the intention of the insured must, therefore, be ascertained from the plain import of the language, made use of. The language made use of, directs the proceeds of the policy to be paid to a trustee, who is directed to apply same to the discharge of the personal debts, only, which the insured might owe at the time of his death, and which were not secured by liens upon lands and the residue, the trustee

should pay to the appellants. The only devise to appellants, was what might remain of the proceeds of the policy after the payment of the character of debts, designated. If nothing should remain after the payment of such debts, there was no residue to go to the appellants. The language, which is plain, is not susceptible of any other construction. It is insisted, however, that in as much as the character of debts, which the trustee was directed to apply the proceeds of the policy in satisfaction of, exceeded the sum of the policy at the death of the insured, and in as much as the insured directed, that the residue of the proceeds should go to appellants, that he must have intended, that the other assets of the estate, should be exhausted in the payment of the debts before the proceeds of the policy should be applied. It can, however, be as reasonably surmised, that the insured, at the time the change of beneficiaries was made, and the disposition of the proceeds, as directed by the policy, determined upon, contemplated, that he should satisfy the debts of the character mentioned, or at least, a portion of them, before his death, and at least, it may be surmised, that he knew his estate, the encumbrances upon different portions of it, and his indebtedness and the saving of which portions and species of his property to his heirs, would be to their best interests. Anyhow, he specifically, set apart the proceeds of the policy to the payment of certain character of the debts, which he might be owing at his death, and to appropriate it otherwise, would be to do so in contradiction of his expressed wish. The appellants, if considered devisees, are in the nature of legatees after the payment of debts and such devisees, are not entitled to contribution after the payment of the debts; Kentucky Statutes, sec. 2075. The case of Blanchard v. Herbert, 5 Ky. Op. 8, relied upon by appellants, has no application to the facts of the instant case, as in the case quoted the testatrix made a specific devise of a house and lot to one of her heirs. The house and lot were encumbered by a lien debt of the testatrix. She devised her residuary estate, generally, to her children, including the specific devisee. She made no provision for the payment of her debts, nor did she charge the house and lot specifically devised with the payment of the debt, which was a lien upon it. It was held that the specific devisee was entitled to require the debt paid out of the residuary estate, which was devised, generally,

upon the principle, that the rights of the general devisees, are subservient to the rights of the specific devisees with respect to the payment of the testator's debts, as a general rule. If the house and lot, which were the subject of the specific devise, had been charged by the testatrix with the payment of the debt, which was a lien upon them, a very different state of case would have been presented from that, which was presented by the record in that case, and a different conclusion would have been arrived at.

Another theory, upon which it is insisted, that appellants are entitled to be subrogated to the claims of the creditors, is that the arrangement by which the change of beneficiaries of the policy was effected, by which its proceeds were to be first applied to the payment of the debts of certain creditors, amounted to an assignment of the policy as a security for the payment of such debts, and that the arrangement having been made at the request of the debtor, it gave the policy the status of a surety, for the payment of the debts, and the appellants the status of sureties of the insured, while he was living, and the general assets of his estate after his death, and the proceeds of the policy having been exhausted in the payment of the debts, the appellants should be substituted to the claims of such creditors, as against the assets of the estate, which otherwise would pass to the heirs, upon the equitable principle of subrogation.

Touching this contention, it may be conceded, that where an insured owes debts and makes an assignment of the policy to the creditor, without any consideration passing at the time, the general rule is, that the assignment though absolute in form will be considered as an assignment as a security, and if the debts are paid, the insured will be entitled to a return of the policy, or to such portion of its proceeds as may be left after the discharge of the debts. Baldwin v. Hayden, 24 R. 900; Caudill v. Woodward, 96 Ky. 646; Baird v. Sharp, 100 Ky. 606.

The transaction here, was not an assignment on the part of the insured but a change of beneficiaries, but as to the beneficiaries after payment of debts, the same then, as stated above, would occur, that is, they would be entitled to such part of the policy, as was not consumed in the payment of the debts, not however, because they were sureties, but on account of the express conditions of the policy when treated as testamentary in its character.

To be entitled to subrogation one must pay money to a creditor in discharge of the debtor's obligation, or he must suffer a loss by the subjection of property of which he is the owner to the payment of another's debt, and one or the other of these things must occur before the right of subrogation arises, regardless of the situation, in which he stands to the debtor. Appellants were in no wise personally obligated for the debts of the insured and advanced no money to their discharge, and hence if entitled to subrogation, property, of which they were the owners, must have been subjected to the payment of the debts. They were not the owners of any interest in the proceeds of the policy except such as existed at the death of the insured and not the conditional right, which they had under some previous designation, as the insured had the right to change the beneficiaries without their consent. Hopkins v. Hopkins, 92 Kentucky 324; Wirgman v. Miller, 98 Kentucky 624; Howe v. Fidelity Trust Company 28 R. 486; Mutual Life Insurance Co. v. Twyman, 28 R. 1157; Wrathers v. Stacey, 26 R. 683. At the death of the insured their interest in the proceeds of the policy was the right to such part, only, as remained after the satisfaction of the debts, to the payment of which the insured had specifically set apart the proceeds of the policy. If a contract existed between the insured and the residuary beneficiaries touching the transaction, the terms of the contract were the same as the designation of the beneficiaries in the policy. Nothing remaining of the proceeds of the policy after the payment of the debts designated, appellants suffered no property loss and no right of subrogation arose.

The judgment is therefore affirmed.